Bell et ux. *v.* Pittsburgh (et al., Aplnt.).

Argued March 22, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*William B. McFall, Jr.,* of *Dalzell, Dalzell & McFall,* for appellant.—The county was liable: Com. v. Brice, 22 Pa. 211; Bucher v. Northumberland Co., 209 Pa. 618; Collins v. Com., 262 Pa. 573; Hubbard v. Crawford Co., 221 Pa. 438; Cousins v. Butler Co., 73 Pa. Superior Ct. 86; Scibilia v. Phila., 279 Pa. 549; Fox v. Phila., 208 Pa. 127.

*A. L. Balter,* of *Braslcy, Rubin, Balter & Cole,* for appellee.—A county is liable for its torts when it is acting not as a governmental agent but as a private corporation or is performing special duties imposed on it with its consent or voluntarily assumed by it.

It is well settled that a state is not liable for the negligence of its officers and agents: Collins v. Com., 262 Pa. 572; Lias v. Historical Assn., 88 Pa. Superior Ct. 534; Cousins v. Butler Co., 73 Pa. Superior Ct. 86.

It is equally well established that this immunity from liability for the negligence of its officers and agents applies not only to the state itself, but also to agencies or instrumentalities of the state, when in the exercise of public or governmental powers or in the performance of public or governmental duties: Cousins v. Butler Co., 73 Pa. Superior Ct. 86; Scibilia v. Phila., 82 Pa. Superior Ct. 328.

The above rule has been modified to the extent that both a municipal corporation and a quasi-municipal corporation are liable for the negligence of their agents, even in the performance of governmental duties, when the legislature has imposed the duty of maintenance: Scibilia v. Phila., 82 Pa. Superior Ct. 328; Bucher v. Northumberland Co., 209 Pa. 618; Hubbard v. Crawford Co., 221 Pa. 438; Gehringer v. Lehigh Co., 231 Pa. 497.

In determining the distinction between the governmental and the business functions of a public body, the

test applied by the courts has been the object and purpose of the legislature in conferring the powers: Scibilia v. Phila., 82 Pa. Superior Ct. 328.

OPINION BY MR. JUSTICE KEPHART, April 22, 1929:

The City-County Building in Allegheny County was erected under the Act of 1913, P. L. 96, as amended by the Act of 1915, P. L. 12. The act provided for the erection, use and management of the structure, with authority in the two governing bodies to enter into an agreement to effectuate the full exercise of the powers thus conferred. This agreement covered the use and occupation of certain parts of the building by the city and of other parts by the county. Where one of the parties occupied more space than its share, a specified rate per cubic foot as rental was provided for the excess. The agreement also covered maintenance, repair, care and operation of the building. There are elevators in each end, one half of which are operated by the county with its labor, the other half by the city under a similar arrangement. The building is lighted and heated at their joint expense. It contains the county offices, the courts of common pleas, the Bar Association and the Law Library, also such city offices as the mayor's, treasurer's, city controller's, police bureau, department of public safety, department of public health, public welfare, director of supplies, council chambers, city solicitor, and practically all others, including bureau of water, bureau of granting permits and licenses and all revenue-producing bureaus.

Part of the building is rented to private business enterprises including a cigar stand, public telephones and a tunnel under the building. Persons desiring to transact business with any of these departments are invited into the building where they may use the elevators indiscriminately, that is, either those of the city or county, irrespective of whether the visitor is on city or county business; the operators of the elevators do not know the

character of the journey on which their occupants are engaged.

Helen Bell entered an elevator to go to the public welfare department of the city, to obtain a permit for the city hospital. She was directed by the dispatcher to enter an elevator which was standing open, waiting for passengers. The elevator was in the part occupied by the county and was operated by its employee. There was no one else in the car when she got on. She had taken about two steps when it started upward quickly and she was thrown to the floor. The outer door of the elevator shaft had been closed but the inner door on the cage was still open and her right arm was caught between the elevator and shaft and almost torn from her body. She brought suit against the county and the city and recovered a verdict of $8,000 against the county, on which judgment was entered.

The question presented is whether, when, in the joint ownership, maintenance and operation of a building by a city and county, partly for business and partly for governmental purposes, an elevator, used indiscriminately to carry persons to and from the offices, is so operated as to injure a passenger, the county is liable for the negligent act of its servant who causes the injury. We may assume that the county in its own separate activities was engaged in purely governmental functions and there can be no doubt that the city in many of its departments was engaged in purely business enterprises in this building, notably the water business; in the dual or joint relationship of these agencies of government, their activities must be judged from such legal aspects as their mixed relations warrant.

Where a municipal corporation engages in an activity of business, rather than one of a governmental nature, such as the supply of light and water, which is generally carried on by individuals or corporations, it acts as a private corporation, and not in its sovereign capacity: The Western Saving Fund Society of Phila. v. Phila.,

31 Pa. 183; American Aniline Products, Inc., v. Lock Haven, 288 Pa. 420. The City of Pittsburgh is engaged in the supply of water to the public, and as such its activities are those of a business corporation. In considering the joint discharge of business and governmental undertakings through the same medium, we may liken the county itself to the federal government in its connection with the shipping board. See Haines v. Lone Star Shipbuilding Co. et al., 275 Pa. 260. When the government embarks in an industrial enterprise through corporate form (or without that form) it places its name and its sovereign position on the same plane as that of any other stock company or dealer in a similar commodity. The fact that some of the activities centered in this building are exclusively of a purely governmental nature will not affect liability, when they are joined with business activities. To separate the various journeys to these different activities by movements of time or particular instances of use would be to destroy the unity of the rule that imposes liability for negligent acts against one of the parties. A trip by one in regard to a governmental function and a trip by one in respect to business in the same vehicle cannot be separated when viewing the duty and responsibility of the carriers which transport the parties. Where these acts in furtherance of the activities of the separate agencies are at times mingled and at times alternated, there is no separation when testing their legal effect as related to responsibility for the negligent acts of servants. Reason and justice dictate that the rules governing business activities predominate. The instrumentality must always be considered in the use in which the joint arrangements placed it, namely, joint business and government use. The courts cannot be expected to unscramble the mixed relations in which the parties find themselves through their agreement.

We need not discuss the well-settled rules with respect to the maintenance and use of buildings and

grounds occupied for the exercise of governmental functions, such as courthouses, jails and the like; nor need we repeat the discussion in Scibilia v. Phila., 279 Pa. 549, where the Chief Justice said: "The implied common law liability or nonliability of a municipality for the torts of its servants depends upon the character of service they were performing at the time of the injury. If they were acting for the city in its corporate or business capacity, the municipality may be held liable; but if they were performing duties of a public or governmental character, there is an immunity from municipal liability." We have found that among the city's activities, which the county joined in promoting, were certain business enterprises carried on in the building. In addition, the two bodies jointly engaged in business enterprises in leasing parts of the structure; and finally the combination of their interests to effect a given purpose through the joint building was in itself a business enterprise, in that it lessened the cost of government operation.

The case in principle is ruled by Fox v. Phila., 208 Pa. 127. Construing this case (Scibilia v. Phila., supra), the Chief Justice says: "The questions discussed in the second case do not appear to have included the point as to whether, in conducting the building known as the City Hall, in Philadelphia, the municipality was performing a governmental function or carrying on a business undertaking; that it was doing the latter seems to have been assumed, probably on the ground that, since, in this structure, owned by the municipality, are housed not only the local courts and the purely governmental departments of the city, but also the revenue-producing and purely business departments of the latter, the structure should be considered as any other business or office building."

The court below did not err in holding the county liable on the question submitted; there is no doubt the

negligence of the elevator operator causing the injury was for the jury: Strobel v. Park, 292 Pa. 200.

Judgment affirmed.