LEO COHEN *vs.* THE GENERAL HOSPITAL SOCIETY OF CONNECTICUT.

*First Judicial District, Hartford, March Term, 1931.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued March 4th—decided April 16th, 1931.

* Transferred from the Third Judicial District.

*Joseph I. Shrebnik,* for the appellant (plaintiff).

*Frederick H. Wiggin* and *Frank E. Callahan,* for the appellee (defendant).

BANKS, J.  The complaint alleged that the plaintiff entered the premises of the defendant for the purpose of calling for his wife who had been a patient at the hospital and was discharged, that it became necessary for him to carry her from the hospital building to his waiting automobile, and that in doing so he tripped over an iron pipe which had been negligently placed and permitted to remain close to the exit of the building, and sustained personal injuries.

The defendant, in its second defense, alleged that it was a public charitable corporation specially chartered by the State for the purpose of maintaining a general hospital for the relief of the poor and suffering, and that all its property and income was held in trust for and devoted to that particular charitable use.  In a third defense it repeated the allegations of the second defense and further alleged that the plaintiff's wife was admitted to the hospital at the request of the plaintiff and herself, and that the plaintiff agreed to pay and did pay the regular hospital charges for her care and treatment which were less than the cost to the defendant of such care and treatment.  The plaintiff de-

murred to these defenses on the ground that the facts therein stated did not constitute a defense to the plaintiff's cause of action, and the trial court overruled the demurrer. The correctness of this ruling is the only question upon this appeal.

In the defenses demurred to the defendant claims immunity from liability for injury resulting to the plaintiff from its negligence upon the ground that it is a charitable institution, and the demurrer to these defenses raises the vexed question of the extent of the liability in tort of an eleemosynary corporation.

One of the grounds upon which the defendant bases its claim to immunity from liability is that it is a State institution performing public governmental functions, and therefore exempt from liability upon the same theory that limits the liability of a municipal corporation for its acts in the performance of a governmental duty. The second defense alleges that the defendant was chartered by a Special Act of the General Assembly in 1826, which is made a part of this defense and which enacted that certain persons, named therein, and such others as might from time to time be associated with them for the purpose of establishing and maintaining a general hospital in New Haven, and their successors, "be, and they hereby are, incorporated for such purpose, and made a body politic, by the name of 'The General Hospital Society of Connecticut,' and by that name, shall be capable of suing and being sued, pleading and being impleaded, and may purchase, hold, sell and convey estate, real and personal, to an amount not exceeding fifteen thousand dollars, to be holden by said society at any one time; may have a common seal, and the same may alter and change at pleasure, and may make and execute such by-laws and regulations, not contrary to the laws of

this State or of the United States, as shall be deemed necessary for well ordering and conducting the concerns of the society." This Act created a private corporation dedicated to the purpose of general and public charity. The defendant is a public charity in the popular significance of the term; the benefits it bestows are public, but its organization and management are private. Zollmann, American Law of Charities, § 472; 13 R. C. L. 939. Though it receives aid from the State in the way of exemption from taxation, and by State appropriation toward its support, it is not a State institution, and in its operation is not acting as an agency of the sovereign. It is not therefore entitled to immunity on the ground that it is an arm of the government engaged in the performance of a public governmental duty.

The defendant makes the further claim that as a charitable institution its funds are held in trust for the particular charitable purposes for which they were given, that it is a breach of trust to apply such funds to any other purpose, that payment of damages in tort actions is not a purpose contemplated by the trust, and that therefore such funds cannot be diverted to the payment of such damages. A charitable corporation, which is not a State institution engaged in the performance of a governmental duty, is not entitled to immunity from liability for its tortious acts because of the public character of the charity it dispenses. It is a private corporation capable of suing and being sued like any other corporate entity. Nor does the fact that its funds are held in trust free it from such liability. Being a corporation organized for charitable purposes it is of course bound to apply its corporate funds to such purposes only, and holds them under a quasi-trust arising from such restriction. In this re-

spect it does not differ, however, from any business corporation whose officials are bound to hold and apply its property only for the purposes for which the corporation was organized. The relationship of a corporation—whether eleemosynary or otherwise—to its corporate property is not that of a strictly legal trustee to his trust funds. Even in that relationship "the trust fund is protected from immediate levy to satisfy the execution, not because of its complete immunity, but rather from technical reasons connected with the legal estate of the trustee in the property. Its technical immunity affords it no ultimate protection. . . . The merely technical immunity of a private trust fund from execution upon a judgment recovered in an action of tort affords no reason for the real immunity of the funds of a charitable corporation where the technical considerations do not apply." *Powers* v. *Massachusetts Homœopathic Hospital,* 109 Fed. 294, 300. Such immunity from liability for its tortious acts or those of its employees as may be claimed by a charitable corporation must be based, neither on the public character of its charity nor on the fact that its funds are held in trust, but upon its eleemosynary character. And such is the rationale of the decisions in those jurisdictions in which the so-called "trust fund theory" is adopted. It is said that public policy forbids the crippling or destruction of charities, which are established for the benefit of the whole public, to compensate an individual member of the public for injuries inflicted by the negligence of the corporation or its servants or agents, and that it is better that the individual should suffer injury without compensation than that the public be deprived of the benefit of the charity. *Vermillion* v. *Woman's College of Due West,* 104 S. C. 197, 88 S. E. 649. The fundamental question

then, raised by this claim of the defendant, is one of public policy. If the alternative were that stated by the South Carolina court, whether the individual should suffer injury without compensation or the public be deprived of the benefit of charity, plausible reasons might be advanced in favor of the preservation of our charitable institutions at the expense of the occasional individual who might be deprived of his right of action in tort. But the situation does not present such a dilemma. Though in most jurisdictions hospitals are held immune from liability to their patients for the negligence of their doctors and nurses, for reasons which will be considered later, in England and the majority of the States they are subject to actions in tort by strangers or their own employees, and their funds subject to depletion by the payment of damages awarded in such actions. This has not resulted in crippling or destroying such charitable institutions in those jurisdictions. Rather the question is whether the individual should suffer the loss or it should be passed on to society and the general public. Or, to put it in another way, is there any good reason requiring under sound public policy that the individual be deprived of his right of recovery from such a corporation because its funds are derived from the charitably minded public and devoted to the relief of suffering and distress? If it be conceded, as we think it must, that the enforcement of the individual's right to recover from a charitable corporation for its tortious acts will not deprive the public of the benefits of such institutions, we fail to see upon what ground it can be said that public policy requires that a charitable corporation should be granted absolute immunity from tort liability. It is a corporation, capable of suing and being sued, and liable upon its contracts as

any other person, corporate or individual. That its funds have been dedicated to charity does not place it beyond the law. The will of the donor or donors of the funds of the institution does not exempt them from the operation of the general laws of the land. A charity should not be permitted to inflict injury upon some without the right of redress, in order to bestow charity upon others. The result would be to compel the injured person to contribute to the charity against his will. Per contra, the modern tendency of the law is to shift the burden from the innocent victim to the community at large. The possibility, suggested in defendant's brief, that a fire or explosion, or similar catastrophe, resulting from the negligence of the employees of a charitable institution such as the defendant, might result in judgments for damages so huge as to cripple its work and deprive future generations of its benefits, can of course be provided against by insurance covering such contingency.

Whether or not, and to what extent, a charitable corporation is liable in tort for its negligence, or that of its servants and agents, is a question that has been frequently before the courts. It has been said that "the cases on this subject present an almost hopelessly tangled mass of reason and unreason such as is not often encountered in the law," Zollmann, American Law of Charities, § 813, and that the marked differences in the cases, both as to results and the process by which they are reached, appear "in the confusion of the quasi-trust arising from the restriction which binds every corporation to apply its corporate funds to the purposes for which it was organized, with the relation of a strictly legal trustee to his trust funds; and especially in the various means by which courts have sought to escape the patent injustice of apply-

ing the extreme doctrine of *respondeat superior* to the personal defaults of employees of charitable institutions." *Hearns* v. *Waterbury Hospital,* 66 Conn. 98, 123, 33 Atl. 595. Dicta in the early English cases of *Duncan* v. *Findlater* (1839) 6 Clark & F. 894, and *Feoffees of Heriot's Hospital* v. *Ross,* 12 Clark. & F. 507, to the effect that such institutions were entitled to immunity in tort actions on the ground that to allow damages out of a trust fund would be to divert it from the purposes contemplated by the founder, have been frequently cited in this country as authority for the trust fund theory of exemption of charitable institutions from tort liability. In *Mersey Docks Trustees* v. *Gibbs* (1866) 11 H. L. 686, the dictum in *Duncan* v. *Findlater* was held unfounded in law and the later English cases have definitely rejected the trust fund theory. *Hillyer* v. *Governors of St. Bartholomew's Hospital,* L. R. (1909) 2 K. B. 820, 825; *Lavere* v. *Smith's Falls Public Hospital,* 9 British Rul. Cas. 13.

The numerous cases involving the question of the tort liability of charitable corporations are collected and analyzed in an exhaustive note in 14 A. L. R. 572, and supplementary notes in 23 A. L. R. 923, 30 A. L. R. 455, 33 A. L. R. 1369, 42 A. L. R. 971 and 62 A. L. R. 724. In a number of States the courts have adopted the trust fund theory of the early English cases, and have held such corporations entitled to an absolute exemption from tort liability to every class of plaintiff. In others this theory has been relied upon in support of an exemption from liability though the facts of the cases did not require the adoption of that doctrine. In the better reasoned cases, and in the majority of those where the plaintiff was not a patient of the hospital (in which cases a different rule of ex-

emption applies), the trust fund theory has been rejected, and the courts have held such institutions liable in tort to strangers, invitees and employees. We cite a few typical cases. *Hewett v. Women's Hospital Aid Asso.*, 73 N. H. 556, 64 Atl. 190; *Bruce v. Central M. E. Church*, 147 Mich. 230, 110 N W. 951; *Marble v. Nicholas Senn Hospital Asso.*, 102 Neb. 343, 167 N. W. 208; *Basabo v. Salvation Army*, 35 R. I. 22, 85 Atl. 120; *McInerny v. St. Luke's Hospital Asso.*, 122 Minn. 10, 141 N. W. 837; *Geiger v. Simpson M. E. Church*, 174 Minn. 389, 219, N. W. 463; *Hordern v. Salvation Army*, 199 N. Y. 233, 92 N. E. 626; *Kellogg v. Church Charitable Foundation*, 112 N. Y. Supp. 566, 203 N. Y. 191, 194, 96 N. E. 406; *Hospital of St. Vincent v. Thompson*, 116 Va. 101, 81 S. E. 13; *Powers v. Massachusetts Homœopathic Hospital*, 109 Fed. 294, 300; *Putnam Memorial Hospital v. Allen*, 34 Fed. (2d) 927; *Bruce v. Young Men's Christian Asso.*, 51 Nev. 372, 277 Pac. 798; *Cowans v. North Carolina Baptist Hospitals, Inc.*, 197 N. C. 41, 147 S. E. 672. See also 5 R. C. L. 378; 13 R. C. L. 946, 948; 11 Corpus Juris, 374, § 106, and cases there cited.

In *Hearns v. Waterbury Hospital, supra,* the plaintiff brought suit to recover damages for injuries resulting from the alleged negligent and unskillful treatment which he received as a patient at the hospital. The defendant claimed exemption from liability both under the trust fund theory and upon the ground that a public charitable hospital which has exercised due care in the selection of its agents is not liable for an injury to a patient caused by their negligence. The court, in an exhaustive review of the English cases, stated that the *Heriot's Hospital* case was not regarded as an authority on the subject in that jurisdiction, and made it clear that the English rule did not exempt a public chari-

table institution from liability in all actions for negligence. This court declined to adopt the trust fund theory, but held that "the defendant—whatever may be the principle that controls its liability for corporate neglect in the performance of a corporate duty—is not liable, on grounds of public policy, for injuries caused by personal wrongful neglect in the performance of his duty by a servant whom it has selected with due care." (p. 126.) The opinion points out that the law which makes one responsible for his own act, although it may be done through another, is based on a principle of universal justice, while the law which makes one responsible for an act not his own, because the actual wrongdoer is his servant, is based on a rule of public policy. It states that this rule of public policy, which is distinguished as the doctrine of *respondeat superior* used in its narrower meaning, is bottomed on the principle that he who expects to derive the advantage from an act done for him by another, must answer for any injury which a third person sustains from it, and concludes that a public charitable hospital, which derives no benefit, in the sense of personal and private gain, from what its servant does, does not come within the main reason for the rule of public policy which supports the doctrine of *respondeat superior*. The court also bases its conclusion that the rule of *respondeat superior* should not be applied in favor of a patient at the hospital upon the fact that "such patient, who may be injured by the wrongful act of a hospital servant, is not a mere third party, a stranger to the transaction—he is rather a participant." (p. 125.) Upon the facts in the *Hearns* case the decision went no further than to hold that a public charitable hospital was not liable for injuries sustained by a patient as a result of the negligent conduct of physicians and

nurses employed by it, in the selection of whom it exercised due care. This decision is in line with the great weight of authority both in England and this country. See cases collected in A. L. R. notes, *supra*. It is said that public policy requires such exemption from liability. Of course some sound reason must be given for the adoption of such public policy otherwise the statement simply begs the question. The reasons given are far from uniform. Some courts rely upon the nonapplicability in such cases of the doctrine of *respondeat superior,* which was the theory mainly relied on in the *Hearns* case. Others say that one who accepts the benefit of a public or private charity enters into a relation which exempts his benefactor from liability for the negligence of his servants upon the theory of an assumption of the risk or of implied waiver of any claim against him. Still others hold that immunity can logically be based upon the theory that the physicians and nurses in attendance upon the patients in a hospital are not the servants of the hospital but of the patient upon whom they are in attendance, and that the hospital has performed its full duty when it has exercised due care in their selection. While for one reason or another the courts have held a public charity immune from liability for the negligence of its employees, in the employment of whom it has exercised due care, such exemption from liability has not generally been extended to cover actions brought by employees, invitees or strangers. In such actions the majority of the courts have failed to discover any sound reason of public policy justifying an exemption of the charity from liability for injuries negligently inflicted.

In *Bunnell* v. *Waterbury Hospital,* 103 Conn. 520, 131 Atl. 501, the plaintiff recovered damages for in-

juries resulting from a fall into an open elevator shaft in a building owned by the defendant in which he was present as an invitee. The defendant assigned as error the failure of the trial court to charge the jury that it could be held liable only in the event that it failed to exercise ordinary care in selecting its servants and agents. We held that the trial court was not bound to so charge since no request was made to charge in accordance with this claim which was not made in the pleadings, but said that the trial court might have assumed from what was said by this court in the *Hearns* case and from the cases (a number of which were cited) in which the defendant was held liable in such action, that the defendant did not feel justified in making the claim of immunity.

The plaintiff was not a patient of the hospital but was at most an invitee when he went to the hospital for his wife who had been a patient. The fact that he had agreed to pay and did pay for her care and treatment at less than its cost to the defendant did not place him in the same legal situation as his wife had she been the plaintiff. The defendant owed him the duty which any landowner owes to an invitee who comes upon his premises. *Hospital of St. Vincent* v. *Thompson,* 116 Va. 101, 81 S. E. 13, 51 L. R. A. (N. S.) 1025; *Hordern* v. *Salvation Army,* 199 N. Y. 233, 92 N. E. 26; *Bruce* v. *Central M. E. Church,* 147 Mich. 230, 110 N. W. 951; 13 R. C. L. 949.

In view of our conclusion that the eleemosynary character of the defendant corporation does not afford it immunity from liability to an invitee for the tortious acts of its servants and agents, it becomes unnecessary to discuss the question as to whether the complaint alleges the failure to discharge a non-delegable duty, and the consequent claim of the plaintiff that the de-

fendant was for that reason liable for its corporate negligence.

The facts alleged in the defenses demurred to do not constitute a good defense to the cause of action set up in the complaint, and the demurrer thereto should have been sustained.

There is error, the judgment is set aside, and the cause remanded to be proceeded with according to law.

In this opinion the other judges concurred.

