# Wray *v.* The State.

## *Murder.*

(Decided Feb. 6, 1908. 45 South. 697.)

1. *Witnesses; Constitutional Provisions; Right to Examine.*—Un-
der the provision of section 6, Constitution 1901, the defendant has a
constitutional right to cross examine opposing witnesses.

2. *Witnesses; Examination; Evidence at Preliminary Hearing.*—
The right to cross examine the opposing witnesses has no application
in the matter of dying declarations nor where, in a previous investi-
gation, in the preliminary prosecution, the opportunity to cross ex-
amine a witness was given when such witenss has passed without
the jurisdiction of the trial court or has died or become incapable
of giving his testimony.

3. *Criminal Law; Witnesses; Permitting Dangerously Ill Witnesses
to Testify.*—Under the facts as set forth in the opinion in this case
it is held that accused was deprived of his constitutional right to be
confronted by witnesses against him since he could not be required
to cross examine the witness offered on account of the dangerous
physical condition of the witness, and that to permit the state to ask
such witness any question material to the prosecution was error.

[Wray v. The State.]

4. *Constitutional Law; Due Process of Law; Right of Trial by Jury.*—Local Acts 1904-5, p. 425, in its provisions in reference to the drawing of juries for the trial of capital cases is not violative of section 6, of the Constitution of 1901.

APPEAL from Jefferson Criminal Court.

Heard before Hon. DAN A. GREENE.

Richard Wray was convicted of murder in the second degree, and appeals. Reversed and remanded.

B. M. ALLEN, ROBERT N. BELL, GASTON & PETTUS, and E. W. WINSTON, for appellant. The defendant was prejudiced by the action of the court in compelling him to proceed with his defense before the state closed its case.——*Moore v. Crowder*, 72 Ala. 79; *Tate v. The State*, 86 Ala. 33. The court erred in permitting the witness Landsdowne to be examined at all under the circumstances, and robbed defendant of his constitutional right to be confronted by the witnesses against him.—1 Elliott on Evidence, 506; 1 Bish. New C. L. & P., 1194; *Maddox v. U. S.*, 156 U. S. 237; *Anderson v. The State*, 89 Ala. 12; *Rosenbaum v. The State*, 33 Ala. 354; *Greene v. The State*, 66 Ala. 40; *Wills v. The State*, 73 Ala. 362; *State v. Buckley*, 54 Ala. 599; *Martin v. King*, 72 Ala. 254; *Cooper v. The State*, 79 Ala. 54; *Tate v. The State, supra; State v. Mannion*, 45 L. R. A. 638; *Houser v. Commonwealth*, 51 Pa. 338; 2 Words & Phrases, 1429; 6 Ib. 4998; *Brown v. The State*, 120 Ala. 342.

ALEXANDER M. GARBER, Attorney General, for the State. No abuse is shown by the record of the discretion of the court in requiring the defendant to proceed with the trial.—*Drum v. Harrison*, 83 Ala. 384; *Reynolds v. The State*, 68 Ala. 502; *Braham v. The State*, 143 Ala. 28. The defendant brought upon himself the consequences of his failure to take advantage of the opportunity offered him to cross examine the witness

Landsdowne, and cannot complain.—*Lowery v. Rowland,* 104 Ala. 420; *Bardell v. The State,* 144 Ala. 54; *Allen v. The State,* 134 Ala. 159; *Lucas v. The State,* 144 Ala. 63.

McCLELLAN, J.—The tragedy, out of which arose the indictment and conviction of this defendant of murder in the second degree, took place in a large room in a house of ill fame. At the time there were present, beside the deceasd, Freeman, and the defendant, Wray, four persons, two women and two men. The cause of the death of the deceased, it is conceded, was a wound inflicted by a pistol ball. The ball appears to have entered the body just above the hip bone on the right side; and the examining physician described the course of the bullet to have been indeflectively "upward at an angle of forty-five degrees, penetrated the right lobe of the liver and ranged more to the front than to the lateral portion, from a perpendicular or medial line of the body." When this physician reached the body of the deceased in the room where he was killed, his foot struck a revolver then lying on the floor. The scabbard of the weapon was near by. There appears from the bill no controversy as to the facts as here briefly rehearsed. We refrain from specific reference to any testimony adduced, further than is necessary to decision.

The state's theory was, of course, that the defendant inflicted the immediately mortal wound; while the defendant, always asserting his innocence, advanced the theory that the death of the deceased was due to his own act. The evidence, in respect of the agency producing the wound, was purely circumstantial. The state sought to fix the responsibility on the accused by testimony tending to show that deceased, just prior to his death, had incurred the ill will of the accused by familiar con-

duct with a woman with whom it appeared the accused had frequently shared her bed. However, the accused denied such ill will and adduced testimony to show his friendly relations with the deceased. It is obvious, from this record, that one of the material elements involved on the trial was: Who, of those in the room, shot Freeman? On this vital issue, cast as the conclusion must have been by the whole circumstances attending the event, including the location of the parties in the room, their attitudes, and their general conduct within the res gestae of the transaction, it was, of course, important to draw, by their chief and cross-examination of all those present, from all the witnesses produced, their knowledge of every incident connected with the death of Freeman.

C. M. Landsdowne was of those in the room at the time Freeman was shot. He was a witness for the state; but at the time of the trial he was, the record shows, a very sick man. After some delay he was brought into the courtroom and the bill of exceptions thus details the condition of the witness, the contention of the defendant, and the action of the court in the premises: "On the next morning C. M. Landsdowne was brought into court on a cot upon the opening of court. He appeared to be very ill, and was scarcely able to speak. The defendant objected to the examination of the witness Landsdowne, who was brought into the courtroom in the presence of the jury on a cot and placed in front of the jury on a cot, as tending to prejudice the rights of the defendant, and as being improper and illegal, and because he appeared to be mentally and physically not in condition to be cross-examined. The court overruled the objection, and the defendant then and there duly reserved an exception. On this objection the defendant asked leave of the court to examine Dr. Paul Cocke the physician of

said Landsdowne, and to this the court agreed. After some examination of the witness the court stated: 'Mr. Heflin, I don't believe this man is in a physical condition to go through the ordeal of an examination. I think it would be wrong and inhuman. I don't feel like taking the responsibility, because I don't need the physician to tell me he is not in condition to go through the ordeal of an examination. He is a mighty sick man, and his condition is such that an examination might bring on complications that might prove fatal, and I don't feel like taking the responsibility myself, and will not do it. I have talked to the witness myself, and, while he could make a statement, I believe, to the satisfaction of himself and to the satisfaction of the jury, I don't believe'— At this point the witness' physician, Dr. Paul Cocke, came into the court-room, and after conferring with him the court said: 'After talking with the doctor, I don't feel like it would be humane to subject this witness to examination and the possible excitement that an examination might bring on. The doctor says it might result in bringing on a hemorrhage, which might result fatally, and I cannot give my consent to permit it to be done.' Immediately after this ruling by the court the solicitor offered to introduce the evidence taken on the preliminary before Justice of the Peace Russell, stating in the presence of the jury that they had it taken down stenographically and that he offered to introduce it, and asked whether the lawyers on the other side would agree to any thing. Whereupon the solicitor asked the court to let him introduce it to which the court replied that he could not, unless the defendant agreed to it. The solicitor stated that he wanted to ask the witness one question. The court ruled that he would permit the solicitor to ask the witness one question, to which ruling of the court the defendant then and there duly excepted. The

question that was proposed to be asked, and which was asked, was: 'Mr. Landsdowne, did you kill George Freeman?' To which the witness answered: 'No, sir.' The counsel for the defendant asked the court whether or not he refused to allow the defendant to cross-examine the witness. The court held that he did not so refuse. Thereupon the defendant reserved an exception to the court's permitting defendant to cross-examine said witness after stating that he was not in a condition to be examined, and upon the further ground that, in the condition the witness was in, any statement he would be liable to make would be liable to be given undue weight or credit by the jury; and the defendant moved to exclude the answer of the witness to the question asked by the state, upon the ground assigned to the examination of the witness, and upon the further ground that he was not in a condition to stand a cross-examination. The court overruled the motion, and the defendant then and there duly excepted."

Counsel for the defendant take the point that the defendant was deprived of his constitutional right to be "confronted" by the witnesses against him. We are of that opinion, and will state the grounds of our conclusion. Const. 1901, art. 1, § 6, provides that the accused in criminal prosecutions has the right "to be confronted by the witnesses against him." This provision of our organic law is similar to that existing in many of the United States, and so, in other jurisdictions, as well as our own, has been the subject of judicial construction. The consensus of such construction is, and in this we can discover no possible contrary opinion, that the right "to be confronted by the witnesses against him" imports the constitutional privilege to cross-examine the opposing witnesses. We set down a few of the authorities in support of this interpretation of the clause: *Pate v.*

*State,* 86 Ala. 33, 5 South. 575; *Howser v. Commonwealth,* 51 Pa. 332; *State v. Mannion,* 19 Utah. 505, 57 Pac. 542, 45 L. R. A. 638, 75 Am. St. Rep. 753; Bishop's New Crim. Law & Procedure, § 1194; *Mattox v. United States,* 156 U. S. 237, 15 Sup. Ct. 337, 39 L. Ed. 409; 1 Elliott on Evidence, § 506.. This right is, of course, subject to exceptions as well as to reasonable, within law-set bonds, regulation by the trial court. A notable exception is found in the introduction of dying declarations. As to this class of testimony the accused is denied the right to be so confronted. And the constitutional rule has also been held to not apply where, on a previous investigation in a prosecution against the accused, the opportunity was open or availed of by the accused to cross-examine a witness who has since passed without the jurisdiction of the trial court, or has died, or has become incapable of giving his testimony. It is seen, from the bill, that this defendant was not denied the right to cross-examine Lansdowne; on the contrary, the court expressly afforded him that opportunity, which he declined. But we apprehend that, though the opportunity to cross-examine an opposing witness in a criminal case may be in fact affirmatively offered the accused, yet conditions and surroundings may so circumstance this opportunity to cross-examine as that the right itself loses its substance and becomes a shadow. It necessarily results that, where the opportunity is given by the trial court in its well-reposed discretion in the premises, its action will not be condemned in exercise in the given case, unless it clearly appears that that discretion has been prejudicially exerted against the right of the accused to cross-examine the witness.

In this instance the witness was so ill as that the court pronounced it inhuman to subject him to the ordeal of an examination. This conclusion was confirmed

by the statement of the physician present, who foreshadowed the probable extreme result that might attend an examination. Manifestly, this condition of the witness was such as to not only embarrass the state in the prosecution of the defendant; but it also submitted to defendant, or his counsel, the opportunity to cross-examine him burdened with the foreknown and foreannounced probability that a cross-examination might result fatally. The right to cross-examine cannot be so conditioned—so conditioned as that to avail himself of it the defendant must assume the hazard of ending the life of the witness. That this view is justified is proven by the action of the court in permitting the solicitor, and in thus limiting him to ask the "one question." The question propounded sought to elicit and did elicit an extremely important reply from the desperately sick witness. Perhaps it was the question of all others possible of address to him most probably influential in support of the state's contention that the defendant, and he alone, shot deceased. To permit the state to propound, and the sick witness to answer, that question, was to let him testify in support of the theory of the state, and in refutation of that advanced by the defendant, and to lay upon the defendant the imperative necessity, the conditions warranting, to cross-examine. The witness was not, as affirmatively appears, in a condition to submit to the cross-examination, and the defendant pursued the proper course in refraining from crossing him. The motion of the defendant to exclude the answer was well made, since no cross-examination could be had, and its denial was error to reversal.—*Tate v. State, supra;* 3 Elliott on Ev. § 993; *Heath v. Waters,* 40 Mich. 457; 8 Ency. Pl. & Pr. p. 99 et seq.

There is no merit in the appellant's insistence that the act approved February 8 1895 (Loc. Acts 1894-95,

p. 425), is violative of section 6, art. 1, of the Constitution in respect of trial by jury drawn from a territory within two miles of the courthouse of Jefferson county. The organic law expressly recognizes the propriety and convenience of taking the jury, under the circumstances stated in the act assailed, from a district less than a county. The brief of the Attorney General collates many authorities decisive of the objection here made.

Other questions argued by counsel need not be now considered. For the error stated, the judgment is reversed, and the cause is remanded.

Reversed and remanded.

TYSON, C. J., and SIMPSON and ANDERSON, JJ., concur.