Prinkey et al. *v.* Township of Dunbar, Appellant.

Argued April 19, 1932.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*E. C. Higbee* of *Higbee, Matthews and Llewellyn,* for appellants.

*E. B. Brown,* and with him *J. C. Glassburn,* for appellees.

OPINION BY TREXLER, P. J., July 14, 1932:

Actions of trespass against a township to recover damages by reason of a truck breaking through a floor of a bridge. The lower court states the facts, as shown by plaintiffs, as follows:.

"Robert D. Prinkey, aged nineteen and J. M. Prinkey, aged sixty-one, were engaged in hauling and delivering coal to customers over this township road and bridge. Robert drove the one-ton Ford truck and his father sat by his side in the cab. In delivering coal they drove over the bridge in an easterly direction, and in returning to the coal mine, in a westerly direction. At four. P. M. the Prinkeys approached the eastern end of the bridge, travelling at a speed from eight to ten miles per hour. Robert was driving the truck, and it was empty. This was a one-way bridge, partly covered with coal ashes, and the track which was followed was diagonal, starting on the right at the eastern side, and ending on the left at the western edge of the bridge, as the Prinkeys were travelling. When they were two-thirds of the way across the bridge, they heard a noise, as of breaking wood, felt a sudden jar, a bump like an axle bumping on wood, some boards on their left raised up, the steering wheel was knocked out of Robert's hands, the left front wheel of the truck went down, the car turned over on its left side, and then went over the side of the bridge into the bed of the stream. When it came to rest the wheels were in the air and the men were in the cab.

As to the construction of the bridge, it was fourteen feet long and thirteen feet wide; the two sills of the bridge were of oak, eight by twelve inches, ran with the road, and rested on stone abutments; between the sills, and paralleling them, were five railroad irons or beams, which were approximately two feet apart, and these also rested on the stone abutments. The floor of the bridge was of oak planks, which rested on the sills and iron beams. There was a guard rail on the upper or northern side of the bridge, but none on the southern side.

It also appears from plaintiff's testimony that when the car broke through the bridge there were three

planks broken, one of the planks being broken into two pieces. All but one of these planks were offered in evidence. The hole which was made by the left front wheel of the truck was inside of the wooden sill on the southern side, was from six to eight inches wide, and thirty inches long. The planks next to the hole were pushed forward something like six inches. The oak planks comprising the floor of the bridge were of different thicknesses and widths, were affected with dry rot, and had not been replaced for many years." The jury found in favor of the plaintiffs.

(1) An objection urged by the defendant is that the physical facts show that the accident did not occur in the way plaintiffs claim, that they have stated that the accident happened in a certain way, and the proof showed that it happened in some other way, and that this must necessarily defeat the action. The picture drawn by the plaintiffs is that the planks in the bridge were broken inside of one of the sills, which on each side were the outermost support of the bridge, and the breaking of these planks inside the sill caused the truck to topple over the side of the bridge and land in an upturned position in the dry run beneath. The appellant argues that the physical facts show that the break occurred outside of the sill or directly over it showing that when the accident occurred the left front wheel of the truck was beyond the sill, and " was in a place it had no right to be." To the last statement we cannot give assent. We fail to see how the driver of the truck could know the exact position occupied by the sill which supported the floor for as we read the testimony there was nothing on the floor of the bridge to indicate where the supporting sills and irons were. The evidence submitted by the plaintiffs shows that by reason of the breaking of the floor of the bridge, this truck was thrown off of it; that the exact position where the break occurred is not definitely shown. That

the physical facts tend to show that plaintiffs were mistaken in stating the exact place where the break occurred, does not affect the matter, if there be sufficient testimony to show that the condition of the floor and its breaking caused the accident. The rule as to incontrovertible facts does not apply. It might well be argued to the jury, that the plaintiffs were imprudent if they steered their car near the edge of the bridge but, under the facts as presented, the court could not declare as a matter of law that they were negligent in so doing.

(2) The absence of a guard-rail was introduced into the case, over the objection of the defendant. There was no error in this. In the first place it was merely part of the description of the bridge. Furthermore, it was for the jury to decide, whether under all the circumstances of the case, the township negligently failed to protect the edge of the bridge with a barrier, Auberle v. McKeesport, 179 Pa. 321; and whether its failure so to do contributed to the damages sustained by the plaintiffs. If it contributed to the damages it is a matter of indifference as to which was the dominant agency, Strader v. Monroe, 202 Pa. 626; 9 C. J. 477. The charge of the court covered this question very fully.

(3) A witness produced by the plaintiff was flatly contradicted. He testified that he was present at the time the accident occurred. Other witnesses stated he was not. The appellant argues that it was the duty of the court, as requested, to tell the jury that it might discredit plaintiffs' case in toto, if plaintiffs knew that the testimony of the witness was fabricated. There is nothing in the case to show that plaintiffs had knowledge of it. The appellant argued that plaintiffs must have known that the witness was not at the seat of the accident. How reliable their powers of observation were, after they were precipitated in the bed

of the creek into which the truck landed, must be left to one's imagination. The court told the jury if they found that the witness was telling an untruth, they should disregard his testimony. The court would not have been warranted to tell the jury that the fact that they did not believe this witness might, standing alone, operate as a bar to plaintiffs' recovery.

(4) At a certain point in the trial the senior plaintiff stated that he had pain to such an extent that he could not continue with his testimony, and his examination was resumed later in the day. The doctor, who was called, stated to the court, not in the hearing of the jury, that the witness was suffering from a collapse due to nervous excitement, had a very low blood pressure and that a paralytic stroke might be imminent. It clearly appeared that the condition of the plaintiff was not simulated. The defendant asked that a juror be withdrawn. This the court refused to do. It was entirely a matter in the discretion of the court. There is no hard and fast rule to follow in such cases, each case must be determined upon its own facts; and unless abuse of discretion plainly appears, we will not interfere.

The judgment in each appeal is affirmed.