(No. 6371. March 28, 1938.)

MARIE HENDERSON, Respondent, v. TWIN FALLS COUNTY, STATE OF IDAHO, Appellant.

[80 Pac. (2d) 801.]

Edward Babcock, James R. Bothwell and Harry Povey, for Appellant.

Chapman & Chapman, for Respondent.

MORGAN, J.—This action has been before us heretofore on appeal from a judgment of dismissal following the sustaining of a demurrer to the complaint (*Henderson v. Twin Falls County*, 56 Ida. 124, 50 Pac. (2d) 597, 101 A. L. R. 1151). The judgment was reversed and the cause remanded for further proceedings. Answer was filed and a trial resulted in a judgment for plaintiff, from which defendant has appealed.

The record shows respondent was a patient in appellant's hospital, where she had undergone an operation for appendicitis; that her father paid the superintendent of the hospital for her hospitalization therein; that shortly after the operation, her surgeon directed her special nurse (not an employee of appellant) to give her a hypodermic injection of normal saline solution; that the special nurse applied for the saline solution to a nurse employed by appellant and in charge of solutions used in its hospital; that in response to this application appellant's employee furnished the special nurse, not saline solution which had been applied for, but boric acid solution, which she, the special nurse, injected into respond-

ent's thighs, causing her very serious injury. This action is for damages resulting from negligence of appellant's employee, the nurse who furnished the boric acid solution in response to the request for normal saline solution.

A physician who treated respondent after her injury was called as a witness in her behalf and testified, on direct examination, as to the nature, character and probable lasting effect on her health of the injection of the boric acid solution. He exhibited to the jury the scars on respondent's limbs caused by the injection of the acid and explained the effect thereof. His direct examination was concluded late in the afternoon and the court was adjourned until the next morning. During the night the witness died.

Appellant moved the court to declare a mistrial on the ground that it had, without fault on its part, been deprived of its right to cross-examine the witness. The motion was denied, whereupon appellant moved that all the testimony of the witness be stricken. The motion to strike the testimony was granted and the judge very carefully instructed the jury not to consider it. Appellant insists the testimony of the doctor was of such a nature that its rights could not be protected by striking his testimony and by the instruction that it be disregarded.

Although it has not been universally followed, the correct rule seems to be that when, as in this case, the cross-examination of a witness has become impossible, by no fault of either party, the litigant against whom such witness is produced is entitled to have his testimony, given on direct examination, stricken. (*Curtice v. West*, 50 Hun, 47, 2 N. Y. Supp. 507; *Wray v. State*, 154 Ala. 36, 45 So. 697, 129 Am. St. 18, 16 Ann. Cas. 362, 15 L. R. A., N. S., 493, and note.)

In such a case it is a general rule that whether a mistrial should be declared is within the sound discretion of the trial judge and his action, declaring a mistrial or refusing to do so, will not be reversed unless an abuse of judicial discretion clearly appears. (5 C. J. S. 499, sec. 1603, and note 64 on page 500.) In *Aderhold v. Stewart*, 172 Okl. 72, 46 Pac. (2d) 340, the Supreme Court of Oklahoma said on page 345:

"Under such circumstances, the trial judge, who is in a position to observe this conduct of the plaintiff, as well as the attitude of the jury and to estimate what amount, if any, prejudice is created by such conduct, is in a better position than the appellate court to estimate and appraise the effect of such a happening, and where the trial court exercises a sound discretion in passing on a question of mistrial, his findings will not be disturbed in the absence of any evidence of abuse of this discretion."

See, also, *Prinkey v. Dunbar Tp.*, 105 Pa. Super. 326, 161 Atl. 640; *Sallee v. St. Louis-San Francisco Ry. Co.*, 321 Mo. 798, 12 S. W. (2d) 476.

It was the duty of the judge who presided at the trial to, and there is no doubt he did, listen carefully to the direct examination of the doctor, and to observe the attention given his testimony by the jurors, and its apparent effect on their minds. After the doctor died, and when the question was presented as to the effect of his direct examination on the jury, the trial judge knew, as well as anyone could know, whether or not appellant's rights would be protected by striking the testimony, and by admonishing the jury to disregard it. All we know about it is what we can learn by reading a typewritten transcript of the proceedings. We did not see the witness when he testified, nor the jury, nor did we have an opportunity to observe the effect on the jurors of the testimony, nor of the judge's order that it be stricken, nor of his instruction that it be disregarded. There is not a suggestion in the record of abuse by Judge Barclay of the judicial discretion which he was required to exercise in deciding whether to declare a mistrial. We have no reason to do otherwise than to place our stamp of approval on his action in striking the direct examination of the doctor and directing the jurors to disregard it and in refusing to enter an order declaring a mistrial.

█ The superintendent of the Pocatello General Hospital, and of its nurses, was called as a witness by appellant and testified relative to the practice pursued, in accredited hospitals, of labeling bottles in which solutions and medicines are kept. She was cross-examined with respect to that

matter, after which the court recessed. On reconvening, counsel for respondent asked that the witness be recalled for one further question. The question was as to whether the Pocatello General Hospital carried liability insurance. It was objected to and the objection was sustained. In the discussion as to the admissibility of the evidence, counsel for respondent stated:

"For the purpose of the record we desire to state the purpose of this question was not to show or to intimate that the Twin Falls general county hospital carries insurance of any kind. We admit for the purpose of the record that it does not."

The question called for evidence which was immaterial, but we are unable to see that the propounding of it resulted to appellant's disadvantage.

In its answer, as a third affirmative defense, appellant alleged:

"That defendant, acting by and through its board of county commissioners, exercised ordinary care and diligence in the employment of its employee then in charge of the dispensary of solutions and medicines in said hospital by then and there exercising reasonable effort and due care to secure the services of a person in that capacity who possessed and would exercise reasonable care, skill and diligence in performing the work and labor required in the premises, and that defendant thereby discharged its full measure of duty to the plaintiff."

As a fourth affirmative defense, it alleged:

"That in the maintenance, management and operation of said hospital the defendant, acting by and through its board of county commissioners, undertook to and did make suitable rules and regulations whereby provision was made for the acceptance, care, treatment and maintenance of indigent patients without first making application to the Probate Court of Twin Falls County; that plaintiff was one of the class admitted pursuant to said rules and regulations for the care and maintenance of indigent patients and was at all of said times an indigent patient in said hospital;"

Appellant has assigned as error the action of the trial judge sustaining a demurrer to its third and fourth affirmative defenses; also his refusal to give certain requested instructions relating to liability of a charitable institution for negligence, and the giving of an instruction to the effect that appellant, in serving afflicted persons, able to pay for services rendered by its hospital, was engaged in a private and proprietary business and that, in supplying hospital care to those able to pay for such services, it was liable to such persons for the negligence of its employees. Appellant also assigns as error the action of the judge in denying its motion for a directed verdict, and asserts in support of said assignment that I. C. A., secs. 30–3301 and 30–3302, so far as they permit county hospitals to be operated for pay and profit, and to incur the liabilities of hospitals of that character, are unconstitutional.

Nearly all these assignments relate to matters fully considered and decided in the former opinion, and opinion on rehearing (*Henderson v. Twin Falls County*, 56 Ida. 124, 50 Pac. (2d) 597, 101 A. L. R. 1151.) What is said there is the law of the case. (*Hall v. Blackman*, 9 Ida. 555, 75 Pac. 608; *Mathers v. Mathers*, 42 Ida. 821, 248 Pac. 468; *Phy v. Edgerton*, 44 Ida. 530, 258 Pac. 545; *Vinyard v. North Side Canal Co., Ltd.*, 47 Ida. 272, 274 Pac. 1069; *Crockett v. Jones*, 47 Ida. 497, 277 Pac. 550; *Garvin v. First Nat. Bank*, 50 Ida. 491, 298 Pac. 359.) We are bound by it and do not believe any good purpose will be accomplished by attempting to restate it or elaborate it.

Appellant offered in evidence certified copies of the minutes of its board of county commissioners. These exhibits tended to show steps taken by the board leading to the building of the hospital. They were objected to on the ground that they tended to establish no fact which was not admitted by the pleadings. In the course of argument on the objection, counsel for appellant stated the exhibits were offered for the purpose of laying a foundation for proof that the hospital was not operated for profit and that appellant exercised reasonable care in the selection of its employees. Thereupon counsel for respondent further objected to the introduction of the

exhibits on the ground that appellant's third and fourth affirmative defenses did not allege facts sufficient to constitute a defense to respondent's cause of action. The last-mentioned objection was thereafter referred to by the trial judge and counsel as a demurrer. An examination of the record fails to disclose any demurrer to these affirmative defenses and we will treat the assignments of error as being directed to the ruling on said objection to the introduction of evidence.

The exhibits offered did not tend to establish any fact in dispute. That appellant built and operated the hospital is alleged in the complaint and admitted in the answer. The steps taken by the board of county commissioners leading to its construction had no bearing on any issue joined. The ruling excluding the exhibits from evidence was correct. Treating the objection as a demurrer, as the trial judge and counsel did, and the ruling excluding the exhibits as an order sustaining the demurrer, it was correct as to the third affirmative defense, which set forth no fact which would be material, in the light of our former decision.

The fourth affirmative defense contains an allegation which, if true, would defeat respondent's cause of action and, had appellant been deprived of the right to prove that allegation, a reversal of the judgment would result. That allegation is, "that plaintiff was one of the class admitted pursuant to said rules and regulations for the care and maintenance of indigent patients and was at all of said times an indigent patient in said hospital."

Appellant offered to prove that the hospital was not operated for profit and that it had never realized a profit from its patients. It also offered to prove the board of county commissioners had adopted rules governing the admission of patients to the hospital, as follows:

"(No. 1.) Indigent patients known as county cases. That the books of the hospital are credited with the charge against the indigent patients at the same rate that is charged for pay patients.

"(No. 2.) The second class of patients are known as emergency patients and consist of patients admitted upon

the recommendation of a doctor for emergency operations or following an accident. That the question of whether or not the patient shall be classified as indigent patient or as pay patient is thereafter determined.

"(No. 3.) That the third class of patients are those that are required to make a deposit before being admitted to the hospital, usually representing about the estimated charges for one week and who are allowed to stay in the hospital until recommended for discharge by their physician, and who do not pay any further amounts on their charges or who do not pay their hospital bills in full. That the unpaid charges against these patients are carried on the books of the hospital and payments received from them from time to time as former patients who are able to pay, and a portion thereof are each year charged off the books of the hospital as it appears that the patients are unable to pay the remainder thereof.

"(No. 4.) That the fourth class of patients are known as pay patients who pay in full the rates fixed, rates charged by the hospital."

Appellant also offered to prove by two physicians, Dr. Coughlin and Dr. Weaver, that the nurses employed and on duty at the time the boric acid solution, instead of normal saline solution, was furnished were skilled, competent and qualified registered nurses, and appellant had used due diligence in employing its nurses and attendants at the hospital. These tenders of proof were objected to and, during the argument of the objection, the judge stated:

"I am not sure about the witnesses Dr. Coughlin and Dr. Weaver. The defendants have not admitted receiving any money from the plaintiff and if they should attempt to gainsay or deny that, then that evidence would have to go to the jury. I am not ready to rule on that phase of the tender yet."

Mr. ORR CHAPMAN (of counsel for respondent): "If I understand your Honor's ruling if the plaintiff is a pay patient then there is this liability which the supreme court has defined. If she is not a pay patient she must be an indigent patient."

THE COURT: "Yes."

Mr. ORR CHAPMAN: "Now our objection goes—we object to this offer that the fourth affirmative defense and the offer which relates to it is insufficient to constitute any defense and the evidence offered would be incompetent, irrelevant and immaterial, because it would not constitute a defense in that it does not show or attempt to show that this plaintiff was an indigent within the statutes of this state and the only way they could invoke or perform a governmental function with relation to her."

THE COURT: "My thought is if they took her money then they would be a private institution. Now the question of whether they took pay or not has not been admitted, in fact it is denied."

Mr. ORR CHAPMAN: "That is an issue of fact."

THE COURT: "That is why I hesitate to say they cannot use those two doctors for that purpose; if they deny it it is an issue of fact; if they offer no proof it will stand proved."

JUDGE BOTHWELL (of counsel for appellant): "If your Honor wishes in order to keep the record so it won't perhaps become confusing, if your Honor desires and wishes to overrule the offer on the theory that there will be no proof on the part of the defendant contrary to the proof already gone in so far as pay is concerned you may do so and then if we should offer proof—our present notion here is we will not offer any proof on that question—if we should your Honor can reserve or change your ruling."

THE COURT: "Yes I would change the ruling if the offer is made. Let the record stand that way. The offer is rejected with that understanding. . . . ."

From the foregoing it appears appellant's right, to offer evidence in support of its allegation that respondent was an indigent patient in its hospital, was protected. It offered no such evidence and was in no way prejudiced by the ruling on what is referred to in the record as the demurrer to its third and fourth affirmative defenses.

Appellant assigns as error that the evidence is insufficient to support the verdict and judgment in the following particulars:

"a. That there is a total failure of evidence that the hospital operated by appellant was conducted and operated for pay and profit.

"b. That the evidence is insufficient to show that respondent was a pay patient in appellant's hospital."

That respondent was admitted to appellant's hospital as a pay patient is established by the uncontradicted testimony of her father and her brother; that the former paid $40 to appellant for her care therein, by delivering that sum of money to Mr. Patrick, its superintendent. The record also shows the money was paid back by appellant after respondent suffered her injury, due to the negligence of its employee. On that point respondent's brother testified:

"A. Mr. Patrick called me into his office and said 'Mr. Henderson, there has been a grave mistake made here.' He said 'It wasn't my fault.' And he said 'However apologizing doesn't make it right, it doesn't make the patient well again or bring her health back to her.' He said 'We want you to know we want to do what is right about it.' He said 'Now we are going to refund all of the money you have paid us or that your father has paid us.' He said 'We will also take care of all the hospital expenses including special nurses, and she shall have special nurses as long as she needs them, and a private room and we will also take care of the doctors expense; in other words all expense.' "

Neither the testimony as to the payment to the hospital, for respondent's care, nor as to repayment by it of the amount it had received, nor as to the statements of its superintendent, is contradicted although, as above pointed out, the right of appellant to introduce evidence as to respondent's status in its hospital was expressly reserved to it by the trial judge.

The jury found, from ample evidence, respondent suffered grave injuries, which were caused by the negligence of appellant's agent, while she was a pay patient in its hospital.

The judgment is affirmed. Costs are awarded to respondent.

Holden, C. J., concurs.

BUDGE, J.—Without receding from the views expressed in my dissenting opinion in *Henderson v. Twin Falls County*, 56 Ida. 124, 50 Pac. (2d) 597, 101 A. L. R. 1151, I concur in the conclusion reached in the opinion of Mr. Justice Morgan.

AILSHIE, J., Dissenting.—This case was here on appeal from a judgment sustaining demurrer to the complaint. (*Henderson v. Twin Falls County*, 56 Ida. 124, 50 Pac. (2d) 597, 101 A. L. R. 1151.) The judgment was reversed and the cause was remanded for further proceedings. The defendant answered in the lower court and the case went to trial which resulted in a judgment in favor of plaintiff, from which the defendant has appealed.

The assignments of error involve the action of the court in the following respects: (1) The ruling of the court in denying motion for an order declaring a mistrial; (2) the action of plaintiff's attorney in asking a witness on cross-examination concerning the practice in regard to carrying insurance; (3) ruling of the court in sustaining demurrer to the third and fourth affirmative defenses and rejecting evidence in support thereof; (4) as to the alleged unconstitutionality of the law authorizing county hospitals to accept pay patients in such hospitals; and (5) the sufficiency of the evidence to sustain the verdict.

I agree with the majority opinion that it was not error for the trial court to withdraw the testimony of Dr. Morgan from the consideration of the jury.

It seems to be the general holding of the courts, that it is error to deprive a party of the right to cross-examine an adverse witness. (*State v. McNinch*, 12 S. C. 89; *State v. Bigham*, 133 S. C. 491, 131 S. E. 603, 608; *Galindez v. United States*, 19 Fed. (2d) 352, 353; *Resurrection Gold Min. Co. v. Fortune Gold Min. Co.*, 129 Fed. 668, 674; *Sperry v. Estate of Moore*, 42 Mich. 353, 4 N. W. 13.)

It is also held that, where a party has been deprived of the right to cross-examine an adverse witness, without any fault of his, the testimony given in chief should be stricken and the jury should be admonished not to consider it. (*Chi-*

cago, M. & St. P. Ry. Co. v. Newsome, 174 Fed. 394; Templeton v. Charleston & W. C. Ry. Co., 117 S. C. 44, 108 S. E. 363; James Stewart & Co. v. Newby, 266 Fed. 287; Sperry v. Estate of Moore, supra; Curtice v. West, 50 Hun, 47, 2 N. Y. Supp. 507, 509.)

In some cases it has been held that, if the cross-examination was prevented by the death of the witness (and without fault of the adverse party), the cross-examination in such case was rendered impossible by act of God and the testimony should not be stricken but should be allowed to go to the jury. (St. Charles Sav. Bank v. Denker, 275 Mo. 607, 205 S. W. 208; Sturm v. Atlantic Mut. Ins. Co., 63 N. Y. 77, 87; Curtice v. West, supra.) The great weight of authority, and the better reasoning, is that in such case the testimony given in chief should be stricken and withdrawn from the jury. (Wray v. State, 154 Ala. 36, 45 So. 697, 129 Am. St. 18, 16 Ann. Cas. 362, 15 L. R. A., N. S., 493, 496, 497, notes; State v. Bigham, supra; State v. McNinch, supra.) Examination of the foregoing citations will disclose that some of the cases have rested the ruling on particular constitutional provisions guaranteeing an accused person the right to cross-examine all witnesses produced against him, or upon the guarantee that he shall have a right to be confronted by the witnesses against him. (See State v. Bigham, supra.)

There is a line of authority, to the effect that, "If it appears that the impression made by the evidence on the jury is so strong or of such a character that it probably remains, notwithstanding the direction of the court," a mistrial should be granted. (James Stewart & Co. v. Newby, supra; Oates v. United States, 233 Fed. 201, 204; Foster v. Shepherd, 258 Ill. 164, 101 N. E. 411, Ann. Cas. 1914B, 572, 45 L. R. A., N. S., 167, 175; Chicago, M. & St. P. Ry. Co. v. Newsome, supra; Templeton v. Charleston & W. C. Ry. Co., supra; Throckmorton v. Holt, 180 U. S. 552, 21 Sup. Ct. 474, 45 L. ed. 663, 671; 48 L. R. A. 432, notes.)

In view of the fact that the majority of the court are affirming the judgment herein, I refrain from expressing any opinion as to whether or not it was error on the part of the trial court to refuse to declare a mistrial on account of the

occurrence in the matter of the introduction of Dr. Morgan's testimony in chief and his death prior to his cross-examination.

I also agree that there was no reversible error committed by counsel in asking the question of Miss Rasmussen concerning the carrying of insurance, since the court sustained objection thereto.

Respondent contended in the trial court, and appears to take the same position here, that, in order for the county to avoid liability, the burden rested upon it to show that the plaintiff was an indigent patient. I cannot agree to this theory of the case. The burden was on the plaintiff to make out her case and in order to do so it was necessary for her to show that she was a patient in this hospital; and that she was received by consent or under the regulations of the board and the terms of the statute as a *pay patient*. (Sec. 30–3303, I. C. A.) Plaintiff was prosecuting her action against a political subdivision of the state engaged in the discharge of governmental duties. Under the statute, and in accordance with our previous decisions in this case, she could recover only on the theory that she was a pay patient and that, as to the treatment of her while such patient, the county was occupied in ''the performance of proprietary or business engagements.'' The duty, therefore, devolved upon plaintiff to bring herself within the class of persons to whom the county owed the duty of exercising such care and diligence, as a private institution would be required to observe, in the treatment of such a patient. In other words, if plaintiff entered the hospital and received care and treatment as a county charge or non-pay patient, she cannot, after receiving an injury, change her status to that of a pay patient and recover on that theory, even though, in truth and fact, she was not ''an indigent sick or otherwise dependent poor'' patient.

As to whether the hospital was operated at a profit or loss, was immaterial in this case. It was rather an issue as to whether the respondent was admitted and treated as a pay patient; and whether it was at a profit or loss to the county, was outside the issue.

When this case was here before, it stood on demurrer to the complaint, for which purpose we had to consider all the material allegations thereof as if admitted to be true. That complaint alleged:

"III

"That after the erection and acquiring of said hospital, hospital grounds and equipment therefor, the Board of County Commissioners of Twin Falls County, Idaho, and particularly at the times hereinafter alleged, the then Board of County Commissioners of Twin Falls County, Idaho, in accordance with Section 30–3303, I. C. A., 1932, undertook to cause said Twin Falls County General Hospital to suitably provide for and accept patients other than the indigent sick or otherwise dependent poor of said county and to charge and accept payment from such of its patients as are able to make payments for services rendered and care given therein, and undertook to make suitable rules and regulations for its management and operation.

"IV

"That on or about the 14th day of April, 1933, plaintiff entered said Twin Falls County General Hospital for the purpose of receiving surgical attention therein, to-wit: an operation for appendicitis; that she entered said hospital as a pay patient and in reliance upon the duty of the County Commissioners of Twin Falls County, Idaho, to suitably provide for and accept plaintiff as a patient in said hospital and to charge and accept payment from her for the services rendered and care given or to be rendered and to be given to her by said hospital."

Upon these allegations, accepted as true, in considering the demurrer thereto, we held, that the county would be liable for negligence in the care and treatment of plaintiff. The decision on that appeal is the law of the case, in so far as it deals with any question presented by this appeal. (*Hall v. Blackman*, 9 Ida. 555, 75 Pac. 608; *Mathers v. Mathers*, 42 Ida. 821, 248 Pac. 468; *Vinyard v. North Side Canal Co.*, 47 Ida. 272, 274 Pac. 1069; *Crockett v. Jones*, 47 Ida. 497, 277 Pac. 550; *Village of Heyburn v. Security S. & T. Co.*, 55 Ida. 732, 49 Pac. (2d) 258.) When the case went back

for trial, however, and after defendant answered, it became incumbent on plaintiff to prove the allegations which were denied by the answer. The defendant was also entitled, under its answer, to introduce evidence to contradict plaintiff's allegations and proofs and establish the truth of its denials.

Plaintiff introduced her proofs and at the conclusion of her case defendant offered in evidence certified copies of the minutes of the proceedings of the board of county commissioners, as exhibits 2, 3 and 4. These proposed exhibits were certified copies of the minute entries of the board (a) authorizing and directing a representative of the local physicians and the architect to go to Pocatello and inspect the county hospital and secure data as to the construction, plans, etc., maintenance and operation as would be beneficial for a hospital in Twin Falls county; (b) minutes of the board declaring a necessity for erection and maintenance of a county hospital and authorizing the preparation of plans and specifications and advertisement for bids for the construction of a county hospital; and (c) copy of minutes awarding contract for the construction of the hospital.

Objection was made to the introduction of these proposed exhibits on the grounds that they were incompetent and immaterial and would constitute no defense to the plaintiff's cause of action. In the course of argument which ensued, Judge Bothwell of counsel for appellant stated:

"We are offering these exhibits for the purpose of laying the foundation to offer proof to show that this hospital is not operated for profit. There is an issue in this case—it is directly alleged the hospital is operated for profit, and that is denied. We also allege we exercised reasonable care in the selection of our employees. That raises the question whether or not the hospital is operated as a charitable institution, and in connection with our denial that it is operated for profit—those two raise the question. This evidence is offered now for the purpose of laying the foundation of the defendant's case upon that issue."

He and his associate counsel thereafter made extensive offers of proof, to the effect that the hospital was maintained

and operated solely as a charitable institution and was not run for profit, and had never realized any profit from its patients. Among other things, he offered to prove a set of rules adopted by the board in reference to the admission of patients as set forth in the opinion of Justice Morgan. He also offered to prove by two physicians that the nurses employed and on duty were skilled, competent and qualified registered nurses and that the county had used due diligence in employing its nurses and attendants at the hospital. To the latter offers, counsel for plaintiff made the following objection:

"The plaintiff objects to the defendant's offer of proof upon the ground that the same is incompetent, irrelevant and immaterial, and does not state any facts established by the evidence tending to prove or disprove any issue joined by the pleadings herein or constituting any defense of the plaintiff's cause of action."

and thereupon the following proceedings occurred:

"THE COURT: I am not sure about the witnesses Dr. Coughlin and Dr. Weaver. The defendants have not admitted receiving any money from the plaintiff and if they should attempt to gainsay or deny that, then that evidence would have to go to the jury. I am not ready to rule on that phase of the tender yet.

"Mr. ORR CHAPMAN: If I understand your Honor's ruling if the plaintiff is a pay patient then there is this liability which the supreme court has defined. If she is not a pay patient she must be an indigent patient.

"THE COURT: Yes."

In course of the subsequent discussion between counsel and the court, the following occurred:

"JUDGE BOTHWELL: If your Honor wishes in order to keep the record so it won't perhaps become confusing, if your Honor desires and wishes to overrule the offer on the theory that there will be no proof on the part of the defendant contrary to the proof already gone in so far as pay is concerned you may do so and then if we should offer proof—our present notion here is we will not offer any proof on that question—if we should your Honor can reserve or change your ruling.

"THE COURT: Yes I would change the ruling if the offer is made. Let the record stand that way. The offer is rejected with that understanding. What about your demurrers Mr. Marshall Chapman, just what were they?

"Mr. MARSHALL CHAPMAN: The demurrers were interwoven with the offers except the one issue as to which Judge Bothwell has advised the Court.

"THE COURT: At this time they can be overruled.

"Mr. ORR CHAPMAN: The effect of overruling the offer sustains the demurrer.

"THE COURT: Let the record stand that way."

It will be observed from the foregoing that somewhere in the course of these arguments and discussions there originated the idea that a demurrer was either pending or being made to defendant's *third and fourth* separate defenses, and, as disclosed by the foregoing quotation from the record, these real or imaginary demurrers (none appear in the record) were sustained. Defendant's fourth affirmative defense, to which demurrer was sustained, alleged:

"That in the maintenance, management and operation of said hospital the defendant, acting by and through its Board of County Commissioners, undertook to and did make suitable rules and regulations whereby provision was made for the acceptance, care, treatment and maintenance of indigent patients without first making application to the Probate Court of Twin Falls County; that plaintiff was one of the class admitted pursuant to said rules and regulations for the care and maintenance of indigent patients and was at all of said times an indigent patient in said hospital."

It was then too late for plaintiff to demur to the separate defenses except on the ground of failure to state a cause of defense. (Secs. 5–611 and 5–618, I. C. A.) However, the question as to the timeliness of the demurrer is not discussed on this appeal, but the sustaining of the demurrer is *assigned as error,* on the ground that defendant's fourth affirmative defense as above set out was proper and stated sufficient facts to constitute a defense to plaintiff's case. *The demurrer to this defense should have been overruled.*

As I have observed, it would have been a complete defense to plaintiff's action had defendant successfully shown

the truth of its allegation "that plaintiff . . . . was at all of said times an indigent patient in said hospital." The rules established by the board, governing admission of patients to the hospital, were admissible if actual or constructive knowledge of them was brought home to the plaintiff. They might throw light on the circumstances and conditions under which plaintiff was admitted to the hospital. I think, however, the court correctly excluded defendant's proposed exhibits 2, 3 and 4, as they were wholly immaterial in this case.

It has been suggested that the error committed in sustaining demurrer and also the objection to the proffered evidence was either invited or waived by counsel for defendant, when he stated, "our present notion here is we will not offer any proof on that question—if we should your Honor can reserve or change your ruling." That statement, however, was made *prior* to the court's sustaining the demurrers, and, under the circumstances disclosed by the record, I am not prepared to say that defendant was not prejudiced by the action of the court in this respect. Furthermore, it should be remembered that each party was at the time proceeding with the trial on theories partially right and partially wrong; plaintiff contending that "the care of the indigent sick and otherwise dependent poor is a governmental function, and in the performance of this function, the county is not liable for the negligence of its agents. Before, however, Twin Falls County can invoke this rule, it must prove that within the statutory provisions of this state the plaintiff herein is an indigent and otherwise dependent poor person."

As we shall see later, this is not the correct theory on which plaintiff could recover, but she must rather recover on the affirmative theory, that she was a pay patient. On the other hand, defendant seems to have proceeded on the theory that the hospital was erected, maintained and operated as a charitable institution for the care and maintenance of "indigent sick or otherwise dependent poor" and that at no time did it realize any profit from the operation of the same. As heretofore observed, this theory is equally incorrect because it leaves out of the question the decisive fact as to whether or not plaintiff was a pay patient, the question of realizing a profit from the operation being immaterial.

The fact that the statutes may not have been followed in adjudging a patient "indigent" or "dependent," or that an error or mistake may have been made in admitting one as a non-pay patient (if such be the case) would not of itself render the county liable to such patient for negligence in the treatment rendered, or stamp the transaction as a "proprietary or business" transaction under this statute. The test is not whether the patient actually comes within the class designated by the statute as "indigent sick or otherwise dependent poor," but rather was the patient one of the "other patients" whom the county may "accept" and from whom it "may charge and accept . . . . payments for services rendered and care given." (Sec. 30–3303, *supra.*) Clearly the commissioners have power and authority to make and promulgate reasonable rules and regulations governing the admission and classification of patients; provided, always, that such rules and regulations do not conflict with the statutes.

It is true that plaintiff introduced evidence showing that payments were made by her father to apply on her treatment and care, but that does not answer the assignment of error that demurrer was sustained to defendant's answer on this issue and in legal effect excluded evidence on behalf of defendant on that issue.

The judgment should be reversed and a new trial should be ordered.

GIVENS, J., Concurring in Part and Dissenting in Part. As to the main point involved in this case, namely, liability of a county for the negligent operation of its hospital, either to an indigent or a pay patient, when the case was first before this court, 56 Ida. 124, 50 Pac. (2d) 597, 101 A. L. R. 1151, I joined in the dissent of Budge, J., to the effect that no such liability exists. While I concede that the majority holding became and is the law of this case, I still adhere to my views and think the record and issues now before us in the present appeal more sharply emphasizes the soundness of my position.

Therefore I concur except as to the examination of Doctor Morgan and lack of opportunity to cross-examine him be-

cause of his death. I think there was no error in the trial court's withdrawing his direct examination from the consideration of the jury, but I think by the same reasoning which supports such action, the jury should have been dismissed and a new one chosen because I do not believe, because of the dramatic circumstances of the death of Doctor Morgan, the force, vigor and pertinency of his testimony, that the effect thereof, could be eradicated from the minds of the jury merely by the instruction to disregard it. Under the circumstances of this case the testimony in substance could be given by another physician (i. e., it was not of facts procurable from no other witness), hence since respondent was not entitled to have Doctor Morgan's testimony remain in the record, she could not have been prejudiced by a trial before another jury not subjected to the influence, though unwitting and even guarded against by the jury, of the stricken testimony. On the other hand there looms large a situation prejudicial to appellant; the trial should be fair as between both appellant and respondent, therefore, the cause should be reversed and remanded for a new trial.

ON PETITION FOR REHEARING.

(July 2, 1938.)

MORGAN, J.—Appellant has petitioned for a rehearing of this case and insists we have erred in that we have failed to dispose of a federal question presented for decision, which is stated in the second allegation of the first affirmative defense appearing in the answer, as follows:

"That at all of said times in said supplemental complaint mentioned the defendant erected, equipped, maintained, managed and operated said hospital through taxation pursuant to the provisions of Sec. 30–3301 and 30–3302 I. C. A.; that to have maintained and operated said hospital by the defendant herein, acting by and through its Board of County Commissioners for the purpose of rendering hospital service and care to the public in general, needing and requiring such service and care, as pay patients and to have constructed,

acquired, maintained and operated said hospital by the defendant herein in its corporate capacity for pay and profit would have been at all of said times and is in violation of Amendment 14, Section 1 of the Constitution of the United States, wherein it is provided;

" ' . . . . nor shall any state deprive any person of life, liberty, or property, without due process of law; . . . . ' for the reason that there was and is thereby granted by the Legislature of the State of Idaho to the Counties of the State of Idaho the right to levy taxes for private purposes and would have been at all of said times and is in violation of Article 4, Section 4 of the Constitution of the United States for the reason that there was and is granted to the counties of the State of Idaho by the Legislature of the State of Idaho the power to appropriate public funds raised by taxation to private purposes."

It is clear appellant relies on that part of sec. 1 of the Fourteenth Amendment to the Constitution of the United States, commonly referred to as the "due process of law clause." We are not certain what is meant in the answer, and in the petition for rehearing, by reference to Article 4, sec. 4, of the Constitution of the United States, which contains the guarantee to every state of a republican form of government, and of protection against invasion and domestic violence, and which does not appear to bear any relation to anything in this lawsuit.

There is nothing in I. C. A., Title 30, Chapter 33, which requires a county to furnish hospitalization, at public expense, to those able to pay for it. On the other hand, the intention of the legislature that those able to adequately compensate the county for hospitalization should be required to do so, is apparent. If appellant violated the law in this particular, respondent is in no way responsible for it.

From the first allegation of appellant's first affirmative defense, in its answer stated, it appears that it erected, equipped, maintained, managed and operated its hospital pursuant to title 30, chapter 33. It seeks to attack the provision therein contained granting it permission to receive and care for "pay patients," as being violative of those provi-

sions of the Federal Constitution, above mentioned. A litigant, having invoked the benefits of a statute, is estopped to question its validity. (*Brady v. Place*, 41 Ida. 747, 242 Pac. 314, 243 Pac. 654; *Pierce Oil Corp. v. Phoenix Refining Co.*, 259 U. S. 125, 42 Sup. Ct. 440, 66 L. ed. 855; *St. Louis Malleable C. Co. v. Prendergast Const. Co.*, 260 U. S. 469, 43 Sup. Ct. 178, 67 L. ed. 351; *Buck v. Kuykendall*, 267 U. S. 307, 45 Sup. Ct. 324, 69 L. ed. 623, 38 A. L. R. 286.)

 Furthermore, a county, being a municipal subdivision of the state, cannot be heard to urge that its laws violate the due process clause of the constitution. (*Trenton v. New Jersey*, 262 U. S. 182, 43 Sup. Ct. 534, 67 L. ed. 937, 29 A. L. R. 1471; *Cranford Co. v. City of New York*, 38 Fed. (2d) 52; *Sweeney v. State*, 251 N. Y. 417, 167 N. E. 519; *City of Providence v. Moulton*, 52 R. I. 236, 160 Atl. 75.)

The petition for rehearing is denied.

Holden, C. J., and Ailshie, J., concur.

Budge, J., not participating.

Givens, J., continues to adhere to his partial concurrence and dissent, as above set forth.