508

Hillsborough,
Mar. 6, 1951. } No. 4015.

MARY A. DRESCHER, *Adm'x*

*v.*

GRANITE STATE MACHINE COMPANY.

*McLane, Davis, Carleton & Graf* and *Stanley M. Brown* (*Mr. Brown* orally), for the plaintiff.

*Paul E. Nourie* and *Frederick W. Branch* (*Mr. Nourie* orally), for the defendant.

JOHNSTON, C. J. The plaintiff's exception to the finding that there was no causal connection between the injury of December 6 and the fracture of Drescher's right leg raises the issue of whether the preponderance of evidence that the fracture was caused by the injury at the defendant's place of business was so great as to make it appear clearly and definitely that the Court did not act properly in its consideration of the evidence, because it was misled or failed to consider intelligently the evidence. *Condiles* v. *Waumbec Mills*, 95 N. H. 127, 128.

There was evidence to support the finding that Drescher's leg was fractured on December 20, 1946.

The medical expert for the defendant, an orthopedic surgeon, testified that the deceased gave him the following history: "On December 6, 1946, while working for the Granite State Machine Company he was running a saw, when a timber 8 inches by 6 inches by 12 feet long fell about four feet on to his right foot. He was taken to the Sacred Heart Hospital and this was X-rayed. There was no fracture seen. He states that his foot was swollen and became black and blue. He went home and walked with crutches about two weeks. After about two weeks, Dr. Bastian, who was treating him, took off the bandage and told him to walk on his foot. On December 20, 1946, he was in a room where someone was moving a piano, and in attempting to get out of the way from the piano he fell with his right leg under him and fractured it. He was taken to the Sacred Heart Hospital and Dr. Bastian reduced the fracture and applied a cast. He is wearing the cast now and is still at the Sacred Heart Hospital." This statement was in the nature of an admission that was binding upon the plaintiff. It was competent evidence of the truth of the facts stated. " 'No modern court doubts that a *decedent*, whose rights are transmitted intact to his successor, is a person whose admissions are receivable against a party claiming the decedent's rights as *heir, executor,* or *administrator.*' 2 Wig. Ev., s. 1081; *Patten* v. *Patten,* 80 N. H. 590; *Chase* v. *Chase,* 66 N. H. 588, 591; *Packard* v. *Putnam,* 57 N. H. 43, 48." *Hurd* v. *Varney,* 83 N. H. 467, 473.

A competent physician and surgeon attended the deceased **on**

December 6 and every two or three days thereafter through the twentieth and did not discover the fracture until after the collapse on the later date. He did not arrange for X-rays before permitting his patient to walk. X-ray films were taken on December 6 by a competent technician at a Manchester hospital for the purpose of discovering the injuries suffered by reason of the accident. No sufficient reason appeared for taking pictures above the lower third of the right leg. This did not include the area where the fracture later appeared.

The deceased had Paget's Disease in the area of the fracture of the tibia. The orthopedic surgeon called by the defendant testified that he "felt at the time that the fracture was due to the twist on December 20, 1946," and that that was still his opinion. When asked by the Court if he thought it more probable than otherwise that that was so, he replied: "Yes. My opinion is that a fracture such as is shown on the X-ray, even a linear fracture, he would have probably had so much trouble that even the technician would have X-rayed that particular spot." The failure to find Paget's Disease at the site of the fracture on the autopsy was due, according to this expert, to the fact that such a small section of bone was examined.

In view of this evidence, it cannot be clearly and definitely held that no intelligent person would find as the Court did that the fracture was not caused by the accident of December 6.

The plaintiff asks for a new trial because the Court did not consider the uncompleted testimony of Drescher.

The law with respect to such testimony has been stated as follows: "If one is deprived of the opportunity of a cross-examination without fault upon his part, as in the case of the illness or death of a witness after direct examination, it is generally held that he is entitled to have the direct testimony stricken from the record. This doctrine rests on the common-law rule that no evidence should be admitted but what was or might be under the examination of both parties, and that ex parte statements are too uncertain and unreliable to be considered in the investigation of controverted facts." 58 Am. Jur. 340. A similar statement is found in 15 L. R. A. (N. S.) 493. Cases in accord with this view are *People* v. *Cole*, 43 N. Y. 508, 513; *In re: Mezger's Estate* 278 N. Y. S. 669; *Wray* v. *State*, 154 Ala. 36, 43; *Henderson* v. *Twin Falls County*, 59 Idaho 97, 100; *Pringle* v. *Pringle*, 59 Pa. St. 281.

Dean Wigmore does suggest that unless the death or lasting illness would not have prevented cross-examination but for a voluntary act of the witness or the party offering him, the use of the testimony

should be discretionary with the Trial Judge. The statement in full is found in 5 Wig. Ev. (3rd *ed.*) s. 1390, *pp.* 109, 110, 111. "Where the witness' *death* or *lasting illness* would not have intervened to prevent cross-examination but for the *voluntary act* of the witness himself or the party offering him—as, by a postponement or other interruption brought about immediately after the direct examination, it seems clear that the direct testimony must be struck out. Upon the same principle, the same result should follow where the illness is but temporary and the offering party might have recalled the witness for cross-examination before the end of the trial. But, where the death or illness prevents cross-examination under such circumstances that *no responsibility* of any sort can be attributed to either the witness or his party, it seems harsh measure to strike out all that has been obtained on the direct examination. Principle requires in strictness nothing less. But the true solution would be to avoid any inflexible rule, and to leave it to the trial judge to admit the direct examination so far as the loss of cross-examination can be shown to him to be not in that instance a material loss. Courts differ in their treatment of this difficult situation; except that, by general concession, a cross-examination begun but unfinished suffices if its purposes have been substantially accomplished."

It is unnecessary to decide whether in the case of no fault on either side, this jurisdiction would follow the inflexible rule of striking the testimony of the deceased witness or allow some discretion in the Trial Judge. In the present case no postponement or continuance was asked by the plaintiff and the defendant was not at fault in not cross-examining.

Under the fixed rule the unfinished testimony was incompetent but the plaintiff argues that in not moving to strike it out the defendant waived his objection. It is true that under such circumstances the evidence may be considered. *Barlow* v. *Verrill*, 88 N. H. 25. However, the Court on its own motion may exclude or strike out incompetent evidence. This has been established with respect to jury trials. "Although it has been held that ordinarily it is the better and safer practice for the court to defer action on the admission or rejection of evidence until a proper objection is made by the party interested in having the evidence excluded, nevertheless the court is not bound to hear and determine the cause on improper evidence but, in the exercise of its right to control and regulate the conduct of the trial, may of its own motion exclude or strike out evidence which is wholly incompetent or inadmissible for any purpose, even though no

objection is interposed to such evidence." 64 C. J. 231. In note 76, cases from eleven jurisdictions are cited in support. See also, *Schubkegel* v. *Dunn*, 31 Cal. App. (2d) 312, 316 and *Wisniewski* v. *Weinstock*, 130 N. J. L. 58, 60, affirmed in 135 N. J. L. 202.

In trials by the Court where no motion has been made to exclude incompetent evidence, a similar discretion should exist in the Court, either to consider the evidence to which no objection has been made or to strike it on the Court's own motion. So far as the record discloses, the testimony was rejected in the exercise of discretion. *Thistle* v. *Halstead*, 95 N. H. 87, 89.

Under the suggested rule of discretion stated in Wigmore, *supra*, where neither party is at fault, the same result is reached.

No error of law appears in the refusal of the Court to consider Drescher's unfinished testimony.

However, the testimony was rejected on the Court's own motion without notice to the plaintiff that it would not be considered. Whether a further hearing would be equitable, at which time the plaintiff would be permitted to introduce other evidence in place of the rejected testimony, is a question to be addressed to the discretion of the Superior Court. R. L., *c.* 398, *s.* 1.

*Exceptions overruled.*

All concurred.