The plaintiff in this action by her amended complaint sets forth two counts. The first count is based on corporate negligence. No mention is made of the words "agents and servants" and from all of the allegations thereof it appears that the acts or omissions complained of are those of the corporation itself. *Page 161 
The second count, after making certain paragraphs of the first count a part thereof, sets forth further facts which the plaintiff complains establish liability because by reason thereof the defendant corporation created and maintained a public and common nuisance.
The defendant in its answer sets up by way of special defense to both counts, that the defendant was organized under and pursuant to an act of the General Assembly at the May session in 1866 and that this act was adopted as the charter of the corporation, a copy of the certificate of organization having been filed in the office of the secretary of state on February 24, 1896; that the defendant has been from that date a religious and charitable institution having no capital stock or stockholders or members deriving property therefrom, and that upon violation or surrender of its charter, all of its property vests in the bishop of the diocese and his successors, in trust for the church congregation and for other purposes; and that the plaintiff on and before the date of the alleged injury was and has been a member of the parish and congregation of defendant church, and as such was entitled to all the rights and privileges of such member. The plaintiff demurs to both counts of the special defenses, setting forth in substance that the special defenses do not constitute legal defenses to the causes of action set forth in either count of the complaint.
The plaintiff claims that the negligence complained of is corporate negligence, as distinguished from personal negligence of any servant or agent, and that the special defense therefore does not constitute a defense; that the defendant's duty to use reasonable care in maintaining its real estate adjoining a public highway so as not to endanger travel is a nondelegable duty; that defendant has failed to allege that there existed any such legal relationship between the plaintiff and defendant as relieves defendant of liability to her as a traveler on a public highway and its negligence in rendering such highway unsafe for public travel entitles the plaintiff to recover from the defendant for injuries sustained thereby; and that public policy does not preclude the plaintiff from recovering damages from defendant if it caused personal injuries to her through its corporate negligence. And as to the special defense to the second count, the plaintiff demurs practically on the same grounds as to the first count except that she claims it is defendant's duty to so manage and maintain defendant's property adjoining a public highway so as not to create a nuisance; that *Page 162 
this duty is a nondelegable duty; that the plaintiff's alleged membership in the parish and congregation of defendant church does not create between the parties any legal relationship which precludes her from recovering damages from the defendant for personal injuries sustained while traveling on a public highway as a proximate cause of defendant's creation and maintenance of said common and public nuisance; and that the plaintiff is not, because of the facts alleged in the special defense, precluded on the ground of any public policy from recovering such damages proximately caused by the defendant's corporate conduct in creating and maintaining said common and public nuisance on said public highway.
The complaint contains allegations, acts and omissions of acts, which are the acts and omissions to act of the corporation itself, as distinguished from those of its servants and agents. The questions raised by this demurrer are of novel impression in this state and so, so far as counsel or the court have been able to ascertain by diligent search, our Supreme Court of Errors has not decided these questions.
One of the earliest cases dealing with the question of liability or non-liability of eleemosynary corporations for negligence is Hearns vs. Waterbury Hospital, 66 Conn. 98. This was followed by Cashman vs. Meriden Hospital, 117 Conn. 585;Hawthorne vs. Blythewood, Inc., 118 id. 617, and Boardmanvs. Burlingame, 123 id. 646. All of these were actions by patients to recover for negligence of servants or agents. InCohen vs. General Hospital Society, 113 Conn. 188, the plaintiff claimed negligence of defendant's servants in placing a pipe in a dangerous position. In this case the plaintiff was not a patient but an invitee.
Our Supreme Court bases the legal liability not on the "trust fund" theory (which has been rejected by it) but on the theory of "respondeat superior" (which rests on public policy), but holds that this latter doctrine does not apply to charitable corporations which derive no benefit in the sense of personal or private gain from acts its servants or agents may do.
As the pleadings stand the doctrine of "respondeat superior"
is not present, as the acts or neglect complained of is corporate, and therefore the rule of exemption above mentioned is absent. Throughout the cases where liability is sought for neglect in the performance of a corporate duty where our Supreme Court held no liability existed, it was not on the ground of public *Page 163 
policy alone, but for injuries caused by personal wrongful neglect in the performance of a duty by a servant whom the defendant corporation had selected with due care. Boardmanvs. Burlingame; Cashman vs. Meriden Hospital; Cohen vs.General Hospital Society, all supra.
It is to be noted that the Supreme Court stresses the personal wrongful neglect by a servant in these cases. That such corporations are immune from liability for the tortious acts of their agents or servants, is the settled law of this state. But, if as has been held by our Supreme Court in some cases, such as where injury has been caused to a stranger, even where servants and agents have been involved, then surely such a corporation should be liable for its own corporate tortious acts.
The allegations of the first count are based on the negligent construction and maintenance of defendant's permanent structures adjacent to a public highway in such manner as to endanger public travel and that such structures have been so maintained for many years. It was defendant corporation's duty not to construct or maintain such premises adjacent to a public highway which would make travel over the same dangerous. Hanlon vs. Waterbury, 108 Conn. 197, 200;Ruocco vs. United Advertising Corp., 98 id. 241.
A charitable corporation cannot evade or escape its duty by delegating it to any servant. 14 C.J.S., Charities, § 75, p. 547;Shapiro vs. Jewish Board of Guardians, 165 Misc. 581,300 N.Y.S. 556.
The maintenance of defendant's buildings and structures as alleged is clearly a nondelegable duty on the part of a charitable corporation. Hamburger vs. Cornell University, 240 N.Y. 328,148 N.E. 539.
From the language of our Supreme Court as I interpret it, public policy is the usual basis for the non application of the principles of agency for injury caused by the negligence of a servant of a charitable corporation but does not apply to cases involving a breach of corporate duty.
The allegations of the second count alleging that defendant corporation created and maintained a nuisance both under the statute and at common law are met with the same special defense as hereinbefore stated. The question here to be determined is whether a charitable corporation can escape liability for injury occasioned by the creating and maintaining of a nuisance. *Page 164 
Our statute, section 2687 of the General Statutes, Revision of 1930, provides: "If any person shall place, or permit to remain, anything in a highway .... by which the passage of travelers shall be obstructed or endangered, or the highway incumbered, the same shall be a common nuisance...." Defendant is a person within the meaning of this statute.
The allegations of the second count seem to come within the provisions of this statute and it is to be noted that our law makes no exception as to religious or charitable corporations and such corporations have been held liable for damages proximately resulting because of a violation under provisions of statutes substantially the same as ours. Jaeger vs. EvangelicalLutheran Holy Ghost Cong., 219 Wis. 209, 262 N.W. 585;Wilson vs. Evangelical Lutheran Church, 202 Wis. 111,230 N.W. 708.
And apart from the statute, the allegations of the second count seem to me to set forth a common law nuisance. Statevs. Moore, 31 Conn. 479.
And in 10 Fletcher, Cyclopedia Corporations (Perm. ed.) § 4936, the statement of the law on this point is set forth as follows: "There seems to be no authority holding that the doctrine of exemption is broad enough to relieve a charity from liability for maintaining a nuisance." Perhaps the leading case most widely cited on this point is, Love vs. NashvilleAgricultural and Normal Institute, 146 Tenn. 550.
It must be noted that the conduct set forth in the second count is corporate conduct of the defendant and not of any "servant" or "agent."
The plaintiff, therefore, by reason of the facts alleged in the said special defenses to both counts, is not to be denied a recovery for the corporate acts or omissions of the defendant merely by reason of being a member of the parish and congregation of the defendant church. If it be the law that in some cases, such as where injury has been caused to a stranger by servants and agents, it may be liable, then surely such a corporation should be held liable for its corporate tortious acts even though the injury from such acts be to a member of the parish and congregation. See, Foster, J., sustaining demurrer to defendant's special defenses in Koletsky vs. Hartford Retreat,4 Conn. Sup. 106, and Love vs. Nashville Agricultural andNormal Institute, supra. *Page 165 
In these modern times I doubt if the courts would extend or broaden the exemptions mentioned as to charitable corporations, but on the contrary might narrow them, as insurance to cover such contingencies can now be secured at small cost.
I have gone to considerable length in attempting to reach a decision on this matter but feel that the questions involved merited it. Many decisions might be cited in support of the conclusions reached, but I think that those set forth will suffice.
 The demurrers to the first and second counts of the special defenses are sustained.